JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, David Gareau ("Gareau'), guardian ad litem, appeals from the May 11, 2006 judgment of the Cuyahoga County Court of Common Pleas, granting summary judgment to defendant-appellee, Warren Grossman, Ph.D. ("Grossman"). Having reviewed the record and the pertinent law, we reverse and remand.
 {¶ 2} On February 11, 2005, a medical malpractice complaint was filed by Gareau and David and Ingrid DeLaittre, as next of friends, on behalf of Monique DeLaittre, an incompetent, (collectively referred to as "appellants") and against Grossman. The following allegations were set forth in the complaint. Monique attended Oberlin College ("Oberlin") in Ohio from 1996 until she graduated in 2001. During her first three years at Oberlin, she received mental health treatment from a licensed psychotherapist, Dr. Katherine Brunner ("Dr. Brunner"). In June 1999, Dr. Brunner referred Monique to Grossman for treatment.
 {¶ 3} The complaint alleges that Grossman provided mental health treatment to Monique from June 1999 to March 2001, except during a period from September 1999 to May 2000, when she studied abroad. During her treatment, Grossman would regularly touch and kiss her inappropriately. He would also reassure her that this physical contact was part of the treatment.
 {¶ 4} The complaint further asserts that as the treatment continued, the physical closeness, contact, touches and kisses became more frequent. Monique *Page 4 
alleges that Grossman tried to have sexual relations with her, but she never consented to sexual intercourse. She claims that he persuaded her to smoke marijuana and regularly attempted to convince her to live with him as part of her treatment. Monique asserts that, at Grossman's suggestion, she changed her name to"Azise" and became focused on a career as a rock star.
 {¶ 5} Additionally, the complaint states that in May 2001, during the week of her graduation, Monique fled from Grossman and went to France. She lived and traveled in France on her own. One month later, Grossman purchased a plane ticket for her to return to the United States to see him. Monique alleges that Grossman was interested in her physically and sexually and not concerned with her mental well-being. A few days later, Monique went back to France. Monique then engaged in bizarre behavior and joined a cult. By 2002, she stayed in bed for hours, cried excessively, and wet her bed.
 {¶ 6} The complaint also asserts that in July 2002, Monique's father convinced her to move back home to Seattle, Washington. When she did, Monique exhibited signs of paranoia and believed her younger sister was trying poison her. She refused mental health treatment. In late November 2002, she disappeared from home. Police found her on December 13, 2002, with little clothing on, in a catatonic state, and in a tree. Monique was admitted to the psychiatric ward at Harborview Hospital ("Harborview"), in Seattle. Monique's treating psychiatrist informed her *Page 5 
father that she had an extremely severe psychiatric condition that required her to be institutionalized for three to six months.
 {¶ 7} During the first week of her hospital stay, she escaped and was classified as a missing person. In January 2003, police again found her in a catatonic state in a hotel parking lot. Monique was readmitted to Harborview. After two weeks, Monique was released pursuant to a court order, and she agreed to undergo treatment with a psychotherapist. She refused to sign a medical release of her Harborview records for Grossman, because she did not want him to know that she was hospitalized for mental illness.
 {¶ 8} Furthermore, the complaint alleges that in August 2004, Monique went to Hawaii to attend graduate school, but failed her classes and was terminated from her teaching assignment. While in Hawaii, she received mental health treatment from a psychiatrist, Dr. Nancy Luckie, M.D. ("Dr. Luckie"). She returned home to Seattle in December 2004, and continued mental health treatment there.
 {¶ 9} In January 2004, Monique filed a complaint with the State Board of Psychology of Ohio ("State Board"), claiming that she had received frequent treatment from Grossman and alleging sexual and professional misconduct against him.[1] Monique stated, "Dr. Grossman's approach to my treatment included getting *Page 6 
close to me physically, touching me and often kissing me. He reassured me that touching was healing and that he could heal me." The State Board notified Grossman of the complaint.
 {¶ 10} In June 2004, Grossman signed a consent agreement with the State Board. He voluntarily surrendered his license and retired from the practice of psychology. He stated that he anticipated devoting himself to lecturing and writing. The record also consists of several articles written by Grossman, dated between 2001 and 2003. One of these articles is published by a metaphysical, spiritual, and holistic publication. Grossman testified at a deposition on July 18, 2005, but he asserted the Fifth Amendment regarding questions about Monique.
 {¶ 11} At her deposition on December 21, 2005, Monique testified that she attended sessions with Grossman at Oberlin because, "I thought it would be helpful in the last year of my studies there so I would be emotionally strong." She also attended sessions with him to increase her ability to use her hands and body to play the piano and to relieve her back pain. She further testified that she received mythical and energy healing treatment from him. Grossman never prescribed medication for her.
 {¶ 12} Monique testified that Grossman wanted a more intimate relationship with her. She stated, "around January or February 2001, * * * I kind of think I was emotionally vulnerable and it developed and so the patient-doctor relationship *Page 7 
stopped and so it continued more as a romantic relationship." They went on dates and traveled together. Monique stated that their romantic relationship lasted until July 2001.
 {¶ 13} Monique further testified, "I was no longer interested in having a sexual relationship with him and so I moved to the South of France and continued my studies in Nice and so I ended, terminated the relationship." While in France, she traveled by train, studied piano in Monte Carlo, and maintained a bank account. In 2002, she joined a cult in France and allegedly became "brainwashed". She also stated that a court has never found her to be incompetent.
 {¶ 14} On February 13, 2006, Grossman moved for summary judgment based upon the one-year statute of limitations for assault and battery underDoe v. First United Methodist Church (1994), 68 Ohio St.3d 531. He attached his affidavit, averring that he and Monique had a business relationship from 1999 through 2001. He claimed that he provided her with energy healing consulting services to improve her skills as a concert pianist. He also stated that Monique did not exhibit signs at any time that lead him to believe she was of unsound mind.
 {¶ 15} On April 10, 2006, appellants filed a brief in opposition to Grossman's motion for summary judgment. In support, they attached an affidavit of Monique's father. Appellants also attached to their opposition brief an affidavit by their expert, Dr. John Conomy, M.D., J.D. ("Dr. Conomy"), which included his March 12, 2006 preliminary report and April 3, 2006 addendum report regarding Monique's care, *Page 8 
treatment, and medical diagnosis. Additionally, appellants attached to their opposition brief, three affidavits of licensed psychiatrists including, Dr. Anna Harvey, M.D. ("Dr. Harvey"), Dr. Nancy Luckie, M.D. ("Dr. Luckie") and Dr. Deborah Cowley, M.D. ("Dr. Cowley").
 {¶ 16} Monique's father stated that in 1999, Dr. Brunner referred Monique to Grossman, a licensed psychologist. He maintained that in the fall of 2000, Monique's mental and physical health began to deteriorate. He also insisted that while in Europe, she was mentally decompensating.
 {¶ 17} Dr. Conomy stated, "The records I have reviewed detail a long history of psychotic disturbances of variable expression [sic] and continuous activity probably beginning in her teens. She has been variable (sic.) diagnosed as suffering Bipolar Mental Illness and Schizophrenia." Dr. Conomy opined in the addendum report that Monique was in a "psychotic state and incompetent from Fall 1999 through January 2003 and probably for many months after January 2003. I hold that she was psychotic and therefore generally incompetent during that time."
 {¶ 18} Dr. Harvey stated in her affidavit that she treated Monique from January 2003 through July 2003. She averred that prior to her care and treatment, Monique was diagnosed with adjustment disorders with psychotic features. Dr. Harvey opined that Monique was suffering from a bipolar disorder and failed to consistently take her medications. She also maintained that without proper psychiatric treatment and *Page 9 
medications, Monique could not stand the rigors of trial, nor could she assist her counsel with any claims she may have, in a competent or consistent manner.
 {¶ 19} Dr. Luckie also stated in her affidavit that she treated Monique from August 2004 through December 2004. She opined that Monique suffered from paranoid delusions. She asserted that as a result of Monique's mental illness, she was incapable of adequately representing her own best interest in a court of law until recently, subsequent to her acceptance of medication to clear her thought process and stabilize her mood.
 {¶ 20} Furthermore, Dr. Cowley averred in her affidavit that she treated Monique from January 2005 through November 2005. She stated that Monique had prior severe psychotic episodes and opined that she suffered from bipolar disorder. She stated that Monique would fail to regularly and consistently take her medications. She also concluded that without proper psychiatric treatment and medication, Monique would continue to suffer from her psychiatric illness and exercise poor judgment and insight.
 {¶ 21} On May 11, 2006, the trial court issued a judgment entry which granted Grossman's motion for summary judgment and stated, "the court finds that plaintiff's claims are governed by a one year statute of limitation. Doe v. First United Methodist Church, (1994)68 Ohio St.3d 531. * * * [P]laintiff has failed to demonstrate that the captioned case was brought within the one year statute of limitations as *Page 10 
required by Ohio law, and defendants are entitled to judgment as a matter of law.
* * *"
 {¶ 22} It is from this judgment that appellants filed their notice of appeal, and raise their sole assignment of error:
 {¶ 23} "The trial court erred in granting Appellee's Motion for Summary Judgment."
 {¶ 24} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays (2000), 140 Ohio App.3d 1, 10. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.Northeast Ohio Apartment Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188, 192. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Duganitz v. Ohio Adult ParoleAuth. (1996), 77 Ohio St.3d 190, 191.
 {¶ 25} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293. If the movant fails to meet this burden, summary judgment is not appropriate but if the movant does meet this burden, *Page 11 
summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 {¶ 26} The first issue we will address is whether the trial court erred when it applied a one-year statute of limitations based onFirst United Methodist Church, determining that the complaint was not timely filed. In First United Methodist Church, the Ohio Supreme Court held that causes of action for assault and battery based on sexual abuse are governed by a one-year statute of limitations. Id. at 537.
 {¶ 27} Grossman argues that the one-year statute of limitations applies to this case, as the allegations involve assault and battery based on sexual abuse. He also maintains that he did not have a mental health relationship with Monique, but rather, she went to him for "energy healing." On the other hand, appellants assert that Monique received mental health treatment from Grossman and hence a two-year statute of limitations, under R.C. 2305.115, applies.
 {¶ 28} Under R.C. 2305.115(A), "an action for assault and battery shall be brought within two years after the cause of action accrues, * * * if all of the following apply regarding the action, the cause of action, and the parties to the action:
 {¶ 29} "(1) The action is brought against a mental health professional.
 {¶ 30} "(2) The assault or battery claim asserted in the action is that, while the plaintiff was a mental health client or patient of the mental health professional, the *Page 12 
mental health professional engaged in sexual conduct with, [or] had sexual contact with, * * * the plaintiff.
 {¶ 31} "(3) At the time of the sexual conduct or sexual contact * * * the plaintiff was not the spouse of the mental health professional."
 {¶ 32} Further, pursuant to R.C. 2305.115(B), "[i]f the mental health service relationship between the plaintiff * * * and the mental health professional continues after the date on which the cause of action accrues, the two-year period * * * does not begin to run until the date on which that mental health service relationship is terminated by either or both of the parties."
 {¶ 33} R.C. 2305.115(D)(3) defines a mental health service relationship as, "the relationship between a mental health professional and a mental health client or patient of the mental health professional that exists for purposes of the mental health professional's provision of mental health services to the mental health client or patient."
 {¶ 34} Furthermore, R.C. 2305.51(A)(1)(b) and (d) define the relevant terms:[2]
 {¶ 35} "(b) `mental health client or patient' means an individual who is receiving mental health services from a mental health professional or organization.
 {¶ 36} * * * *Page 13 
 {¶ 37} "(d) `mental health professional' means an individual who is licensed, certified, * * * or otherwise authorized in this state, to provide mental health services for compensation, remuneration, or other personal gain."
 {¶ 38} In the instant case, the record shows that Monique received mental health services from Dr. Brunner, a licensed psychotherapist, who referred her to Grossman for further treatment. At that time, Grossman was licensed in Ohio to provide mental health services for compensation. The complaint alleges that Monique received mental health treatment from Grossman. The record also indicates that Monique sought treatment from Grossman for emotional strength, energy healing, hand, body, and back therapy. She stated that she was "emotionally vulnerable" and "the patient-doctor relationship stopped and so it continued more as a romantic relationship."
 {¶ 39} At deposition, Grossman asserted the Fifth Amendment in response to questions about Monique. He later attached an affidavit to his motion for summary judgment, and averred that he and Monique had a business relationship. He also stated that he provided Monique with energy healing consulting services to improve her skills as a concert pianist. Thus, with respect to the first issue, we conclude that there is a genuine issue of material fact as to whether Grossman provided mental health services to Monique.
 {¶ 40} Additionally, appellants contend that there is a genuine issue of material fact as to whether there was sexual contact between Grossman and Monique. *Page 14 
Conversely, Grossman argues that appellants have failed to raise a genuine issue of fact with respect to any alleged sexual contact which may have occurred between Grossman and Monique.
 {¶ 41} In the case at bar, Monique complains that Grossman would regularly touch and kiss her inappropriately. She maintains that he would reassure her that this physical contact was part of the treatment. She asserts that as her treatment continued, the physical closeness, contact, touches, and kisses became more frequent. Monique also testified that she and Grossman had a romantic relationship. Thus, we determine that a genuine issue of material fact exists as to whether sexual contact occurred.
 {¶ 42} The claim asserted in this action is that Monique was a mental health patient of Grossman's and that he engaged in sexual contact with her. Accordingly, we conclude that if the factfinder determines that Monique was a mental health patient of Grossman and that he engaged in sexual contact with her, then the two-year statute of limitations, under R.C. 2305.115, would apply to this case.
 {¶ 43} The next issue we will address is whether there is a genuine issue of material fact as to whether Monique was of unsound mind when the cause of action accrued, and if so, whether the statute of limitations was tolled.
 {¶ 44} R.C. 2305.16 tolls the statute of limitations due to unsound mind, stating in pertinent part, "if a person entitled to bring any action * * * is, at the time the cause of action accrues, * * * of unsound mind, the person may bring [the cause of action] *Page 15 
within the respective times limited by [the applicable] sections, after the disability is removed. * * *
 {¶ 45} "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought."
 {¶ 46} Grossman argues that Monique was not of unsound mind when the cause of action accrued. In support, he asserts that she did not exhibit signs of unsound mind from 1999 to 2001; i.e., she earned her degree and graduated from Oberlin in 2001, and then studied and traveled in France alone. He believes Monique may have become of unsound mind after the point in time when she alleges the cause of action accrued. Therefore, he contends that the second paragraph of the tolling statute, R.C.2305.16, applies to this case and the complaint was not timely filed. Thus, he maintains that the summary judgment was properly granted.
 {¶ 47} Conversely, appellants argue that Monique was of unsound mind when the cause of action accrued and thus the first paragraph of the tolling statute applies. Appellants contend that the statute of limitations was tolled at least until February 11, 2003. Thus, their complaint was timely filed on February 11, 2005, within the applicable two-year statute of limitations. *Page 16 
 {¶ 48} Unsound mind is defined in R.C. 1.02(C) as "includes all forms of mental retardation or derangement." The Supreme Court of Ohio stated that unsound mind includes every species of mental deficiency or derangement. Bowman v. Lemon (1926), 115 Ohio St.3d 326, 329. It is necessary to consider the record to establish whether there is any evidence which tends to show any species of mental deficiency or derangement from which the plaintiff suffered that would prevent her from properly consulting with counsel, preparing or presenting her case, attending to her affairs, and asserting her rights in a court of justice. Id. at 329, 330. "Where a plaintiff claims to have been of unsound mind at the time a cause of action accrues, so as to suspend the statute of limitations, which claim is denied by the defendant, plaintiff has the burden of proving that [she] was suffering some species of mental deficiency or derangement, * * * such issue should be submitted to the jury, the same as any other issue of fact in the case." Id. at syllabus.
 {¶ 49} The Supreme Court of Ohio has more recently stated that although "derangement" is not defined in the Revised Code, it has been equated with insanity. Fisher v. Ohio Univ. (1992), 63 Ohio St.3d 484,488, citing Webster's Third New International Dictionary (1986) 607. Subsequently, this court determined, "the earlier and broader interpretation of unsoundness of mind set forth in Bowman has been superseded by a stricter interpretation of what constitutes mental disability." Livingston v. Diocese of Cleveland (1998),126 Ohio App.3d 299, 313. Insanity is defined in Black's Law Dictionary (8 Ed. 2004) 810, as "[a]ny mental disorder severe *Page 17 
enough that it prevents a person from having legal capacity and excuses the person from criminal or civil responsibility. Insanity is a legal, not a medical, standard."
 {¶ 50} The court in Bradford, GDN., v. Surgical Med. NeurologyAssoc, Inc. (1995), 95 Ohio App.3d 102, 106, analyzed R.C. 2305.16 and concluded that based upon its language:
 {¶ 51} "[T]he type of evidence necessary to show that a person was of unsound mind and, therefore, entitled to the benefit of tolling pursuant to its provision, differs depending on whether it is claimed that she was of unsound mind at the time the cause of action accrued or that she became of unsound mind after accrual of the cause of action. If it is claimed that she was of unsound mind at the time the cause of action accrued, any otherwise admissible evidence tending to support that claim may be used to establish her entitlement to tolling. See Almanza v.Kohlhorst (1992), 85 Ohio App.3d 135 * * *. If it is claimed that she became of unsound mind after accrual of the cause of action, however, the evidence on that issue must include either an adjudication by a court or evidence that she was institutionalized or hospitalized for a condition or disease that caused her to be of unsound mind. The tolling provided by R.C. 2305.16 for someone who became of unsound mind after the accrual of her cause of action lasts only during the period `during which [the] person is adjudicated as being of unsound mind or confined under a diagnosed condition which renders [her] of unsound mind.'Fishery. Ohio Univ. (1992), 63 Ohio St.3d 484, 487. * * *" (Parallel citations omitted.) *Page 18 
 {¶ 52} Ohio courts have repeatedly held, "[a] general claim of disability, absent specific details, will not toll the time for the running of an applicable statute of limitations." Robinson v.Kramer (Dec. 9, 1999), 8th Dist. No. 76643, 1999 Ohio App. LEXIS 5916, at 10, citing McKay v. Culpit (1992), 80 Ohio App.3d 487. Furthermore, the plaintiff must demonstrate that his or her condition continually prevented the timely prosecution of the lawsuit. McKay, at 492.
 {¶ 53} This court has consistently held that evidence of plaintiff's unsound mind, before and after the cause of action accrued, is insufficient to toll the statute of limitations in the first paragraph of R.C. 2305.16. See Casey v. Casey (1996), 109 Ohio App.3d 830;Winters v. Cleveland Clinic Found. (May 1, 1997), 8th Dist. No. 71110, 1997 Ohio App. LEXIS 1757; Livingston, supra; and Robinson, supra. Then relying on Casey, Livingston, and Winters, this court concluded inRobinson, supra, "plaintiff must present some evidence of [her] state of mind at the time the cause of action accrued in order to satisfy the first paragraph." Id. at 15.
 {¶ 54} In the case sub judice, appellants claim that Monique was of unsound mind at the time the cause of action accrued in 2001. Thus, pursuant to R.C. 2305.16, it is incumbent upon them to present evidence supporting that claim. Appellants submitted affidavits from Monique's father and four doctors, including three psychiatrists who treated Monique during the relevant periods of time.
 {¶ 55} Under Civ.R. 56(E), an affidavit must demonstrate that the affiant's opinion is based on personal knowledge; that the facts contained in the affidavit are *Page 19 
admissible as evidence; and that the affiant is competent to testify to that matter. Expert affidavits offered in support of or in opposition to summary judgment must comply with Civ.R. 56(E), as well as the Rules of Evidence governing expert opinion testimony. See Evid.R. 702-705.Fredrick v. Vinton Cty. Bd. of Edn., 4th Dist. No. 03CA579, 2004-Ohio-550, at _23. Further, the affidavit must set forth the expert's credentials and the facts or data that was considered in rendering the opinion. Id.
 {¶ 56} "Although Civ.R. 56(E) contains a `personal knowledge' requirement for all affiants, in the context of expert opinions this requirement does not refer to the event underlying the claim. * * * Requiring personal knowledge of the underlying event would prevent expert testimony in all situations in which the expert was not also an eyewitness to the underlying event. When a qualified expert relies upon facts shown by admissible evidence, his affidavit is admissible for purposes of summary judgment." Id. at _24.
 {¶ 57} When ruling on a motion for summary judgment, a trial court may consider documents, other than those specified in Civ.R. 56, that are presented in support of, or in opposition to, the motion when no objection is raised. Barnes v. Lee (Apr. 8, 1999), 10th Dist. No. 98AP-923, 1999 Ohio App. LEXIS 1628, at 5. Thus, because Grossman made no objection to the affidavits in the trial court, he is precluded from doing so now. Id. at 5-6. Therefore, we may consider this evidence on appeal. *Page 20 
 {¶ 58} Father stated in his affidavit that in 1999, Dr. Brunner referred Monique to a licensed psychologist, Grossman, to continue the mental health treatment that Dr. Brunner could no longer provide Monique. Father maintained that in the fall of 2000, her mental and physical health began to deteriorate. He asserted that Monique reassured him that she was seeing a professional clinical psychologist, Grossman.
 {¶ 59} Dr. Harvey averred that she provided psychiatric care and treatment for Monique from January 2003 through July 2003. She stated that prior to her care and treatment, Monique was diagnosed with adjustment disorders with psychotic features. She further stated that Monique suffers from bipolar disorder and that without proper psychiatric treatment and medication for her bipolar disorder, Monique could not stand the rigors of trial, nor could she assist her counsel in the prosecution of any claims she may have in any competent or consistent manner. She further insisted that it is likely that Monique had this disorder in the past when she was not undergoing treatment or taking medications, which, she believed, would have similarly rendered her incapable of assisting counsel in her legal representation consistently or competently.
 {¶ 60} Further, Dr. Harvey maintained that while under her care, Monique failed to consistently take her medications. Contrary to her professional medical advice, Monique failed to continue her treatment and stopped taking the medication prescribed to her. Dr. Harvey averred to a reasonable degree of professional *Page 21 
certainty, "[w]ithout psychiatric treatment and medication, I believe that Monique will continue to suffer from psychiatric illness and further be incompetent to assist her counsel in the prosecution of any legal claims that she may have."
 {¶ 61} Also in an affidavit, Dr. Luckie stated that she treated Monique from August 2004 through December 2004. She opined that Monique suffers from paranoid delusions and is unable to take care of daily routines. She also averred that as a result of Monique's mental illness, it is her opinion, "within a reasonable degree of psychiatric certainty that she is incapable of adequately representing her own best interests in a court of law until recently, subsequent to her acceptance to medication to clear her thought process and stabilize her mood."
 {¶ 62} Dr. Cowley, stated in an affidavit that Monique received psychiatric care and treatment under her supervision from January 2005 through November 2005. She stated that Monique had prior severe psychotic episodes and opined that she suffered from bipolar disorder. She averred that Monique failed to regularly and consistently take her medications and often would decline to take medication for many weeks. She also asserted that Monique's judgment and insight were extremely poor when she did not take medications and failure to continue medication may result in a full relapse of her psychosis. Dr. Cowley stated that to a reasonable degree of professional certainty, "[w]ithout proper psychiatric treatment and medication, Monique will likely continue to suffer from bipolar disorder. * * * Without *Page 22 
such treatment and medication, I believe Monique will continue to suffer from her psychiatric illness and further continue to exercise poor judgment and insight."
 {¶ 63} Dr. Conomy attached a preliminary report dated March 12, 2006, and an addendum report dated April 3, 2006, to his affidavit. In the preliminary report he reviewed records of Dr. Harvey, Dr. Luckie, and Dr. Cowley. He stated, "I have reviewed a long history of psychotic disturbances of variable expression and continuous activity probably beginning in [Monique's] teens. She has been variable diagnosed as suffering Bipolar Mental Illness and Schizophrenia."
 {¶ 64} In the addendum report, he also reviewed the complaint, affidavit of Monique's father, the consent agreement of Grossman, revocation of license, deposition of Grossman, deposition of Monique, and an affidavit of Dr. Harvey. Dr. Conomy testified, "[t]he totality of medical records and other testimony support the assertion that Ms. DeLaittre was in a psychotic state from the Fall of 1999 through January, 2003 and very probably for many months thereafter. I hold that she was psychotic and therefore generally incompetent during that time."
 {¶ 65} Thus, after a review of all the evidence, we determine there are genuine issues of material fact that exist as to whether Monique was of unsound mind when the cause of action accrued. Monique testified that around January or February 2001 the doctor-patient relationship ended and continued more as a romantic relationship. However, the record indicates that Grossman treated Monique from June 1999 to March 2001, but did not provide her with medication. Monique did see *Page 23 
Grossman one time in June 2001, but it is not clear if it was for treatment purposes. Thus, according to the record, the cause of action accrued in March 2001, because that is when Monique was last treated by Grossman.
 {¶ 66} Unlike Casey, Winters, Livingston, and Robinson, there is evidence of Monique's state of mind at the time the cause of action accrued. Father asserted that Monique's mental and physical health began to deteriorate in Fall 2000 when she met with Grossman for treatment. Further, Dr. Harvey stated that it was likely Monique had bipolar disorder in the past, when she was not undergoing treatment or taking medication. Dr. Luckie also averred that Monique could not represent her own best interest in a court of law until recently and subsequent to her acceptance of medication. Dr. Cowley stated that Monique's judgment and insight are extremely poor when she is not taking medication. Also, Dr. Conomy averred that the medical records and testimony support the conclusion that Monique was in a "psychotic state from the Fall of 1999 through January 2003, and very probably for many months thereafter."
 {¶ 67} Furthermore, according to the record, since the cause of action accrued in March 2001, we also conclude there are genuine issues of material fact whether the statute of limitations tolled until February 11, 2003. Again we point out Dr. Conomy's conclusion that Monique was in a "psychotic state from the Fall of 1999 through January 2003, and veryprobably for many months thereafter " (Emphasis added.) Moreover, Dr. Harvey treated Monique from January through July 2003. Dr. *Page 24 
Luckie treated Monique from August through December 2004. Dr. Cowley treated Monique from January 2005 through November 2005. Each doctor stated that Monique suffered from mental illness, including, bipolar disorder, paranoid delusions, psychotic episodes, schizophrenia, hearing voices, and contemplating suicide. The doctors' affidavits and the complaint indicate that throughout Monique's mental health treatment, she did not consistently take her prescription medications. Each doctor averred that without proper medication, Monique could not assist counsel in legal matters and would exercise poor judgment and insight.
 {¶ 68} Also, father averred that while she was in Europe, she was mentally deteriorating. He alleged that from September 2001 until Spring 2002, Monique made several attempts for employment in France, but all of the jobs fell through. He insisted that Monique told him that she was sleeping excessively and would not even get out of bed to go to the bathroom.
 {¶ 69} Further, he stated that Monique returned home in July 2002, but refused treatment. He asserted that she was paranoid that her sister was poisoning her. He further stated that she isolated herself and he maintained that she sat for hours in a catatonic state. He also alleged that she would sleep excessively and take three-hour showers where she flooded the bathroom several times. He averred that he and his wife were terrified of what Monique might do to herself if they either pressured her to get treatment or abandoned her. *Page 25 
 {¶ 70} Father also asserted that in December 2002, Monique left home without telling anyone and was found ten days later by police in a catatonic state holding a book by Grossman. Father insists that she barely had enough clothing to protect herself from hypothermia. He alleged that Monique was admitted to the psychiatric ward of Harborview for approximately one week, and then she escaped. Father averred that police found her again in a catatonic state and returned her to the hospital for two more weeks. He maintains that she was released pursuant to a court order and she agreed to treatment with a psychotherapist.
 {¶ 71} Father also stated that Monique remained in denial about her mental condition. He maintained that she was prescribed medication, but she rarely took it. Father alleged that in 2004, Monique confided in him that she had thoughts of paranoia, suicide, delusions, and fixations with her body.
 {¶ 72} Therefore, viewing the evidence most strongly in favor of appellants, there are genuine issues of material fact as to whether Monique was of unsound mind when the cause of action accrued. Further, we conclude that there are genuine issues of material fact as to whether the statute of limitations was tolled until February 11, 2003. Therefore, if the factfinder concludes that the statute of limitations was tolled until February 11, 2003, then the complaint was timely filed on February 11, 2005, within the two-year statute of limitations. *Page 26 
 {¶ 73} Finally, we address the issue whether Grossman is barred from submitting evidence regarding matters for which he claimed the Fifth Amendment privilege against self incrimination during his deposition.
 {¶ 74} Appellants argue that the trial court should not have considered any evidence submitted by Grossman, including his affidavit, regarding the statute of limitations because he claimed the Fifth Amendment at his deposition. They also contend that they are entitled to adverse inferences as to all matters on which Grossman invoked his Fifth Amendment right. However, Grossman maintains that the absence of his affidavit would not have materially altered his motion for summary judgment or the trial court's judgment. Further, Grossman asserts that appellants do not support their arguments with Ohio case law.
 {¶ 75} The constitutional privilege against self-incrimination applies both to civil and criminal proceedings alike. Leftkowitz v. Turley
(1973), 414 U.S. 70, 77. This privilege is also available to a witness or a party during deposition. Hartford Ins. Co. v. Parker (Dec. 3, 1982), 6th Dist. No. L-82-181, 1982 Ohio App. LEXIS 11566, at 8.
 {¶ 76} Furthermore, the United States Supreme Court has held, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered to them * * *." Baxter v. Palmigiano (1976),425 U.S. 308, 318. Although a court may draw a negative *Page 27 
inference from a party's refusal to testify, the court is not required to do so. Wolf v. Rosson, 8th Dist. No. 84603 84650, 2005-Ohio-1174, at _20.
 {¶ 77} When ruling on a motion for summary judgment, the trial court may review only evidence properly submitted in accordance with Civ.R. 56(C), including, inter alia, depositions and affidavits. Ellis v.Nationwide Ins. Co., 160 Ohio App.3d 302, 2005-Ohio-1658, at _34. The trial court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 78} Appellants cite Gutierrez-Rodriguez v. Cartagena (1989),882 F.2d 553, and Traficant v. Commrs. of IRS (1989), 884 F.2d 258, for the proposition that Grossman's affidavit should not be considered in connection with his motion for summary judgment, because he invoked his Fifth Amendment privilege at an earlier deposition. AlthoughCartagena and Traficant involve the Fifth Amendment, they are distinguishable from the case at hand. In Cartagena, the trial court limited the defendant's testimony at trial. In Traficant, the trial court limited testimony at a suppression hearing.
 {¶ 79} A review of the record here indicates that Grossman claimed the Fifth Amendment at his December 2005 deposition, as to all questions regarding Monique's treatment and his relationship with her. Then in February 2006, Grossman submitted an affidavit which stated that the purpose of his business relationship with Monique was to provide energy healing consulting services for her *Page 28 
improvement in her skills as a concert pianist. He also stated that during his business relationship with Monique, and at the time he last saw Monique in June 2001, she exhibited no signs of deranged or insane behavior which would lead him to believe she was of unsound mind.
 {¶ 80} We note that appellants, in their brief in opposition to Grossman's motion for summary judgment, requested the trial court to strike Grossman's affidavit. However, there is nothing in the record which shows that the trial court did so. We find no case law which states that an affidavit cannot be considered with a motion for summary judgment when the Fifth Amendment was previously invoked. Furthermore, the law does not require the trial court to draw negative inferences from Grossman's refusal to testify.
 {¶ 81} Therefore, we conclude that if the factfinder determines that Monique was a mental health patient of Grossman and that he engaged in sexual contact with her, then the two-year statute of limitations, under R.C. 2305.115, would apply to this case. Further, we determine that there are genuine issues of material fact that exist as to whether Monique was of unsound mind when the cause of action accrued. Thus, if the factfinder concludes that the statute of limitations was tolled until at least February 11, 2003, then the complaint was timely filed on February 11, 2005, within the two-year statute of limitations. *Page 29 
 {¶ 82} Accordingly, appellants' sole assignment of error is sustained. The judgment of the Cuyahoga County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
It is ordered that appellants recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., CONCURS; COLLEEN CONWAY COONEY, P.J., DISSENTS WITH SEPARATE OPINION.
[1] The typed statement of Monique's complaint is dated January 5, 2003. It appears to be an error because the handwritten date indicates January 5, 2004, and the State Board time stamped it on January 12, 2004.
[2] R.C. 2305.115(D)(1) and (D)(2) refer to R.C. 2305.51 for the meaning of the terms.